# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO VILLEGAS, | 1:07-cv-00230 AWI DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| KATHY MENDOZA-POWERS, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his sentence of fifteen years to life in 1990 for second degree murder. (Exhibits 1 & 2, attached to Answer.)

In the instant petition, Petitioner does not challenge the validity of his conviction or sentence; rather, he challenges the 2005 Board of Parole Hearings' ("BPH") decision finding him unsuitable for parole.

On January 10, 2006, Petitioner filed a state habeas corpus petition in the Superior Court for the County of Butte. (Exhibit 5, attached to Answer.) The petition was denied on January 17, 2006. (Id.)

On February 3, 2006, Petitioner filed a state habeas corpus petition in the California Court of Appeal, Third Appellate District. (Exhibit 6, attached to Answer.) On February 16, 2006, the California Court of Appeal denied the petition. (Id.)

On March 1, 2006, Petitioner filed a petition for review in the California Supreme Court. (Exhibit 7, attached to Answer.)  The petition was denied on April 19, 2006.  (Id.)

Petitioner filed the instant federal petition for writ of habeas corpus on February 12, 2007. (Court Doc. 1.)  Respondent filed an answer to the petition on August 1, 2007, and Petitioner filed a traverse on September 26, 2007.  (Court Doc. 8, 11.)

## STATEMENT OF FACTS[1]

[Petitioner] initiated a verbal altercation with the victim.  At the time [Petitioner] had a handgun in his pocket and his friend was standing nearby holding a rifle.  There was no evidence the victim was armed.  During the argument [Petitioner] withdrew his gun from his pocket, cocked it, and then returned it to his pocket.  As the victim was bending over to enter his car [Petitioner] shot him in the face from a very close distance.  Immediately after the shooting [Petitioner] prevented the victim's friend from aiding him. [Petitioner] fled but before doing so he removed the keys from the car in which the victim and his friends had arrived.

[Petitioner] told the probation officer the victim had intimidated and humiliated him for about two months prior to the shooting.  He also stated in the past the victim had threatened [Petitioner's] life as well as his family. [Petitioner's] girlfriend said she was not aware of any prior disputes between [Petitioner] and the victim.  She also testified that shortly before the shooting she heard the victim say he would kill [Petitioner] when he returned and that she had told a police officer the victim had told [Petitioner] to kill him then because the victim would kill [Petitioner] when he returned. [Petitioner's] girlfriend's sister also heard the victim make the latter statement.

Exhibit 2, Opinion, at 1-2.

## DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

---

[1]  This statement of facts is taken from the California Court of Appeal for the Third Appellate District opinion, dated January 16, 1992, attached as Exhibit 2 to Answer.

1   provisions.

2          Petitioner is in custody of the California Department of Corrections pursuant to a state

3   court judgment. Even though Petitioner is not challenging the underlying state court conviction,

4   28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the

5   threshold requirement of being in custody pursuant to a state court judgment. Sass v. California

6   Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), citing White v. Lambert, 370

7   F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

8   state prisoner in custody pursuant to a state court judgment, even when the petition is not

9   challenging [her] underlying state court conviction.'").

10         The instant petition is reviewed under the provisions of the Antiterrorism and Effective

11   Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

12   70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

13   adjudication of the claim "resulted in a decision that was contrary to, or involved an

14   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

15   of the United States" or "resulted in a decision that was based on an unreasonable determination

16   of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

17   § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

18         As a threshold matter, this Court must "first decide what constitutes 'clearly established

19   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

20   quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

21   Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

22   of the time of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other

23   words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

24   principles set forth by the Supreme Court at the time the state court renders its decision." Id.

25         Finally, this Court must consider whether the state court's decision was "contrary to, or

26   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

27   72, quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

28   grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

3

1   Court on a question of law or if the state court decides a case differently than [the] Court has on a

2   set of materially indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

3   at 72.  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

4   state court identifies the correct governing legal principle from [the] Court's decisions but

5   unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at

6   413.

7       "[A] federal court may not issue the writ simply because the court concludes in its

8   independent judgment that the relevant state court decision applied clearly established federal

9   law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

10  A federal habeas court making the "unreasonable application" inquiry should ask whether the

11  state court's application of clearly established federal law was "objectively unreasonable."  Id. at

12  409.

13      Petitioner has the burden of establishing that the decision of the state court is contrary to

14  or involved an unreasonable application of United States Supreme Court precedent.  Baylor v.

15  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

16  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

17  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

18  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

19      AEDPA requires that we give considerable deference to state court decisions. The state

20  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

21  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied,

22  537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

23  II.   Review of Petition

24      A parole release determination is not subject to all the due process protections of an

25  adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see

26  also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural

27  protections that particular situations demand). "[S]ince the setting of a minimum term is not part

28  of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not

4

... 

constitutionally mandated, even when a protected liberty interest exists." <u>Pedro</u>, 825 F.2d at 1399; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," <u>Id</u>.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. <u>Superintendent, Mass. Correc. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985); <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir.1987).

"In <u>Superintendent v. Hill</u>, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass</u>, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. <u>Id</u>. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. <u>Id</u>., *citing* <u>Superintendent v. Hill</u>, at 455-56. Although <u>Hill</u> involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." <u>Id</u>., *citing* <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of

treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in <u>Greenholtz</u>, Petitioner was provided all that is required.  Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied.  <u>See</u> Answer, Exhibit 4.

At the 2005 parole hearing, the BPH relied on several factors in denying parole including Petitioner's commitment offense and trivial motive, unstable social history, insufficient programming and self-help therapy, and unfavorable psychological reports.  (Exhibit 4, at 62-66.)

With regard to the circumstances of the commitment offense, the BPH found that it was carried out in an especially cruel and callous manner, as the victim was shot at close range in the face with a handgun.[2]  It was carried out in a dispassionate manner as Petitioner armed himself with a gun, and had an opportunity to retreat prior to the shooting, but failed to do so.  In addition, Petitioner failed to seek medical assistance or obtain any aid to the victim.  (Exhibit 4, at 62-63.)

The BPH noted that the motive for the offense was very trivial as it seemed to be the result of an ongoing family dispute regarding child custody.  (Exhibit 4, at 63.)  Based upon these

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense.  The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1 circumstances, "some evidence" supports the BPH's finding that the circumstances of the

2 commitment offense demonstrate that Petitioner presents an unreasonable danger to public safety

3 if released.

4      The BPH further stated that Petitioner had an unstable social history which may be

5 properly considered as a circumstance tending to indicate unsuitability for parole.  See Cal.Code

6 Reg. tit. 15, § 2402(c)(3).  The BPH found that Petitioner clearly has an alcohol abuse problem,

7 of which he has not completely come to terms with.  "Some evidence" clearly supports this

8 finding as Petitioner admitted that he was drinking of the day of the offense and although he has

9 participated in Alcoholics Anonymous for many years he could not identify or articulate the

10 Twelve Step progress of the program, which was of particular concern given Petitioner's history

11 of alcohol abuse.

12      The BPH also considered the unfavorable psychological report which opined that

13 Petitioner had not accepted full and complete responsibility for the crime.  This information was

14 properly considered pursuant to § 2402(b) as the BPH is allowed to consider "[a]ll relevant,

15 reliable information available to the panel" which includes information on a prisoner's "past and

16 present mental state."  See Cal. Code Reg. tit. 15, § 2402(b).  Psychological reports are relevant

17 evidence of which the Board is allowed to review and rely on in determining whether a prisoner

18 is suitable for parole.  Rosa v. Nielsen, 428 F.3d 1229, 1232-1233 (9th Cir. 2005) (per curiam).

19      In addition, the BPH properly considered that Petitioner lacked sufficient parole plans in

20 that he did not have any solid proof or offers of employment.  Cal. Code Reg. tit. 15, §

21 2402(d)(8).

22      The BPH noted that the District Attorney opposed Petitioner's release.  This was properly

23 considered pursuant to Cal. Pen. Code § 3042(a) and (f)(3), and Cal. Code Reg. tit. 15, §

24 2402(b).

25      In addition, the BPH considered the factors supporting Petitioner's release including

26 completion of vocational printing, good work reports, no rules violation reports at all during

27 incarceration, and the last counseling chrono in 1993, attendance in AA and NA, and

28 development of English skills and preparation of G.E.D. exam.  (Exhibit 4, at 65-66 Cal. Code

1    Reg. tit. 15, § 2402(d).)  However, on balance, these positive aspects did not outweigh the factors

2    of unsuitability.

3          Petitioner's claims in his traverse are based only on his disagreement with the BPH's

4    assessment of the evidence, which is insufficient to demonstrate relief under § 2254.

5          In sum, the Board thoroughly considered all relevant evidence in this case and carefully

6    balanced and assessed the various factors. Those BPH's findings that Petitioner present poses an

7    unreasonable risk to public safety were supported by at least "some evidence" and it cannot be

8    said that the state court's resolution of Petitioner's claim "resulted in a decision that was contrary

9    to, or involved an unreasonable application of, clearly established Federal law, as determined by

10   the Supreme Court of the United States" or "resulted in a decision that was based on an

11   unreasonable determination of the facts in light of the evidence before the state court."

12                                    RECOMMENDATION

13         Based on the foregoing, it is HEREBY RECOMMENDED that:

14         1.     The instant petition for writ of habeas corpus be DENIED; and

15         2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

16         This Findings and Recommendation is submitted to the assigned United States District

17   Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

18   the Local Rules of Practice for the United States District Court, Eastern District of California.

19   Within thirty (30) days after being served with a copy, any party may file written objections with

20   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

21   Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

22   and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

23   objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

24   636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

25   may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

26   Cir. 1991).

27         IT IS SO ORDERED.

28    **Dated:   March 24, 2008**                    **/s/ Dennis L. Beck**

1          UNITED STATES MAGISTRATE JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28